## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| PADDYWAX, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MVP GROUP INTERNATIONAL, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   Case No. _____<br>)<br>)<br>)<br>) |

---

### COMPLAINT FOR DECLARATORY RELIEF

---

For its Complaint for Declaratory Relief against Defendant MVP Group International, Inc. ("MVP" or "Defendant"), Plaintiff Paddywax, LLC ("Paddywax" or "Plaintiff") states as follows:

### NATURE OF THIS ACTION

1.      This is a civil action for declaratory relief arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Lanham Act, 15 U.S.C. § 1051, *et seq.*

2.      MVP has accused Paddywax's candles—sold under Paddywax's well-known "Paddywax" brand—of infringing MVP's asserted product-configuration trade dress registrations for an oval-shaped candle vessel associated with MVP's "Colonial Candle" line of candles. MVP has demanded that Paddywax cease and desist, account for any and all sales of purportedly infringing Paddywax products, and pay for MVP's attorneys' fees incurred to-date.

3.      A real, substantial, and immediate justiciable controversy exists between the parties regarding: (a) whether Paddywax's products infringe or dilute any protectable trade dress owned by MVP, and (b) whether MVP's asserted product-configuration trade dress claims are valid and enforceable under the Lanham Act, including in light of the doctrines of utilitarian and aesthetic functionality and the requirement that product design trade dress possess secondary meaning.

4.      Paddywax seeks declarations, *inter alia*: (a) that it has not infringed or otherwise violated the Lanham Act; (b) that MVP's claimed product-configuration trade dress is unprotectable or, at a minimum, of extremely narrow scope; and (c) that MVP is not entitled to threaten or maintain claims premised on the asserted trade dress against Paddywax's current products. Paddywax also seeks related relief, including cancellation of MVP's registrations to the extent they are functional, lack secondary meaning, or otherwise fail to meet the requirements of the Lanham Act.

## THE PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff Paddywax, LLC is a Delaware limited liability company with its principal place of business in Nashville, Tennessee.  Its members are individuals who are citizens and residents of the state of Tennessee.

6.      Defendant MVP Group International, Inc. is a corporation organized under the laws of the Commonwealth of Kentucky with a principal place of business at 430 Gentry Road, Elkin, North Carolina 28621.

7.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act (15 U.S.C. § 1121) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

8.      This Court has personal jurisdiction over MVP because MVP purposefully directs its business and enforcement activities to Tennessee, including sending enforcement correspondence, referenced herein, accusing infringement by a Tennessee company and threatening litigation that would cause injury in Tennessee.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)–(c), because a substantial part of the events giving rise to the claims occurred in this District and because MVP is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

10.      Paddywax designs, markets, and sells candles and home fragrance products under the "Paddywax" brand across the United States through brick-and-mortar and online channels. Through itself and affiliated entities, it also operates The Candle Bar, an experiential destination where customers create their own custom Paddywax candle and shop from a curated retail collection.

11.      MVP markets candles under the "Colonial Candle" brand—and, upon information and belief, other brands—and claims product-configuration trade dress rights in a purportedly distinctive oval-shaped glass vessel for candles, including U.S. Reg. Nos. 4,232,386; 4,232,387; and 4,232,388 (collectively, the "Asserted Registrations").

12.      On information and belief, the oval vessel design associated with MVP's "Colonial Candle" line was the subject of U.S. Design Patent No. D437,948, which has long since expired. As discussed below, MVP now relies solely on trademark/trade-dress theories to claim exclusivity in such vessel shape.

13.      On July 16, 2025, MVP—through counsel—sent Paddywax a demand letter accusing a Paddywax candle line of trade dress infringement and unfair competition and demanding that Paddywax: "[c]ease and desist from manufacturing, marketing, selling, or distributing any candles using the infringing shape or any confusingly similar configuration;" "[r]emove all infringing shape or any confusingly similar configuration;" "[p]rovide a written accounting of all sales of the infringing product since launch;" and confirm compliance with the

foregoing demands within ten (10) calendar days. A true and accurate copy of this July 16, 2025 Correspondence is attached hereto as **Exhibit A**.

14.     After an investigation into the basis of MVP's claims, Paddywax—also through counsel—responded.  In this five-page response letter, sent on October 13, 2025, Paddywax set forth the substantive issues with MVP's claims, including the fact that: (1) U.S. Design Patent No. D437,948 had expired, (2) the functional-nature of the protections sought by MVP barred its assertions of trade-dress protections, (3) even if MVP had asserted a valid trade-dress claim, there are notable differences in the containers used by MVP and Paddywax such that there is no infringement, (4) there is no evidence of any consumer confusion in the candle consumer marketplace, and (5) MVP was generally seeking protections beyond those which are provided by trade-dress law.  A true and accurate copy of this October 13, 2025 response correspondence is attached hereto as **Exhibit B**.

15.     On October 23, 2025, MVP replied, perfunctorily rejected Paddywax's arguments, and reiterated the allegations set forth in Exhibit A.  A true and accurate copy of this October 23, 2025 correspondence is attached hereto as **Exhibit C**.

16.     In this same correspondence, MVP also now asserted that it was entitled to attorneys' fees—in the amount of $5,000.00—from Paddywax.  (*See* Ex. C, p. 4).

17.     MVP's assertions in its correspondence, and its demands on Paddywax are unfounded.

18.     Paddywax's products prominently display the "Paddywax" house mark on product labeling, packaging, websites, and point-of-sale materials. MVP's products prominently display the "Colonial Candle" house mark. (*See* Ex. B, p. 4) (side-by-side image comparison of the two candles).  The prominent and dissimilar marks weigh heavily against any likelihood of consumer

confusion under controlling Sixth Circuit precedent. *See, e.g.*, *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 634 (6th Cir. 2002) ("the presence of [a house mark on a product] does not eliminate the similarity between the trademarks. Instead, this labeling diminishes the likelihood of confusion created by the comparable marks and reduces the importance of this factor."); *Maker's Mark Distillery, Inc. v. Diageo N. Am.*, 679 F.3d 410, 422 (6th Cir. 2012) (citing to *Therma-Scan* in the context of a trade-dress dispute).

19.     The overall appearances of the parties' vessels are materially and noticeably different to ordinary purchasers viewing the products as encountered in the marketplace. Among other differences: (a) MVP's vessel features continuously curved sides forming, what appears to consumers to be, a true oval; (b) Paddywax's vessel features straight, parallel obverse/reverse faces with curved sides, yielding not a true oval, but instead, a flattened profile; (c) Paddywax's vessel geometry and wall taper differ from MVP's; and (d) the lid designs, materials, and visual impressions differ.

20.     Paddywax is unaware of any actual confusion, despite multiple seasons of sales through ordinary channels of trade.  MVP acknowledges this point in its reply correspondence and does not point to any contrary examples of actual confusion that it has experienced. (*See* Ex. C, p. 4).  The absence of actual confusion over a significant period weighs against any likelihood of confusion. *See, e.g.*, *Autozone, Inc. v. Tandy Corp.*, 174 F. Supp. 2d 718, 730 (M.D. Tenn. 2001) ("This factor [lack of actual consumer confusion] weighs against likelihood of confusion given the lack of evidence of actual confusion despite the three years of concurrent use of the marks."), *aff'd* 373 F.3d 786 (6th Cir. 2004).

21.     MVP's correspondence and enforcement posture demonstrate an effort to use trademark law to secure perpetual control over a useful or aesthetically desirable product

configuration after the expiration of time-limited patent rights. Trademark law may not be used to obtain patent-like protection over useful product features or to hinder legitimate competition in product design.

22. Product design trade dress is never inherently distinctive; to be protectable it must have acquired secondary meaning in the minds of consumers as a source identifier. MVP bears the burden to establish such secondary meaning. *See, e.g.*, *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 215-16 (2000); *GMC v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006) (citing the Supreme Court's opinion in *Wal-Mart* for the proposition that "[s]econdary meaning is an element of trade dress infringement which must be proven by the plaintiffs, not the defendants.").

23. The oval vessel configuration that MVP claims is, at minimum, of limited scope and widely used by others in myriad forms and proportions. The asserted configuration is dictated in significant part by utilitarian considerations (e.g., a stable, heat-safe, efficient container for soft container wax) and/or by aesthetic functionality (e.g., an attractive, space-efficient shape that competitors must remain free to use to compete fairly). These issues were raised by Paddywax in its correspondence. (*See* Ex. B).

24. Granting MVP the broad exclusivity it claims would place competitors at a significant, non-reputation-related disadvantage, contrary to the functionality doctrines recognized by the Supreme Court and the Sixth Circuit.

25. Even if the Asserted Registrations are incontestable as to certain elements, incontestability does not immunize functional product configurations from challenge or bar defenses based on functionality, lack of distinctiveness, or overly broad trade-dress claims. *See, e.g.*, 15 U.S.C. § 1115(b) (setting forth defenses for incontestable marks).

26.     MVP's demand letters and threatened litigation have created a real, immediate, and substantial controversy regarding Paddywax's rights to continue making and selling its accused products. Paddywax denies infringement and seeks clarity from this Court related to the same.

## CLAIMS FOR RELIEF

### Count I – Declaratory Judgment for Non-Infringement
### (15 U.S.C. § 1125(a) & 28 U.S.C. §§ 2201-2202)

27.     Paddywax realleges and incorporates the foregoing paragraphs as if set forth fully herein.

28.     An actual controversy exists as to whether Paddywax's accused products infringe or otherwise violate MVP's alleged trade dress under 15 U.S.C. § 1125(a).

29.     Considering the *Frisch* factors as applied by the Sixth Circuit to likelihood of confusion, the parties' products and trade dress are not confusingly similar in overall commercial impression; the parties' prominent and dissimilar house marks further mitigate any risk of confusion; there is no evidence of actual confusion; and the channels of trade and conditions of purchase do not support confusion. *Frisch's Restaurants, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264-65 (6th Cir. 1985).

30.     A judicial declaration is necessary and appropriate that Paddywax's accused products do not infringe MVP's asserted trade dress and do not constitute unfair competition under the Lanham Act.

### Count II – Declaratory Judgment for Unprotectability/Invalidity of Asserted Product-Configuration Trade Dress
### (15 U.S.C. §§ 1052, 1115(b), 1125(a), 1127 & 28 U.S.C. §§ 2201-2202)

31.     Paddywax realleges and incorporates the foregoing paragraphs as if set forth fully herein.

32.     MVP's asserted product-configuration trade dress is functional and/or aesthetically functional and therefore not protectable under trademark law. Alternatively, any protectable scope is narrow and does not reach Paddywax's designs.

33.     Independently, MVP's asserted product-configuration trade dress has not acquired secondary meaning sufficient to function as a source identifier in the minds of ordinary consumers for the configuration itself, as opposed to the "Colonial Candle" word mark and branding.

34.     A judicial declaration is necessary and appropriate that the asserted product-configuration trade dress is unprotectable (in whole or in part) and/or of such limited scope that Paddywax's designs fall outside any protectable ambit.

## Count III – Cancellation/Amendment of Registrations
### (15 U.S.C. § 1119)

35.     Paddywax realleges and incorporates the foregoing paragraphs as if set forth fully herein.

36.     To the extent necessary to afford complete relief, the Court should order the Director of the United States Patent and Trademark Office to cancel or appropriately restrict one or more of the Asserted Registrations (U.S. Reg. Nos. 4,232,386; 4,232,387; and 4,232,388) on grounds including functionality, aesthetic functionality, and failure of the configuration to function as a mark with acquired distinctiveness.

## Count IV – Declaratory Relief of No Dilution
### (15 U.S.C. § 1125(b) & 28 U.S.C. §§ 2201-2202)

37.     Paddywax realleges and incorporates the foregoing paragraphs as if set forth fully herein.

38.     MVP has suggested that Paddywax's sales "dilute" MVP's brand equity. (*See* Ex. A, p. 1)/   MVP's alleged product-configuration trade dress is not famous within the meaning of

8

15 U.S.C. § 1125(c)(2)(A), and Paddywax's products do not dilute any protectable famous mark of MVP by blurring or tarnishment.

39. A judicial declaration is necessary and appropriate that Paddywax's products do not dilute any famous mark of MVP under federal or state law.

## PRAYER FOR RELIEF

WHEREFORE, Paddywax respectfully requests that the Court enter judgment in its favor and grant the following relief:

1. A declaration that Paddywax's accused products do not infringe, dilute, or otherwise violate any protectable trade dress or mark of MVP under the Lanham Act or related law; and

2. A declaration that MVP's asserted product-configuration trade dress is functional and/or aesthetically functional and therefore unprotectable, or in the alternative that any protectable scope is narrow and does not encompass Paddywax's designs; and

3. An order under 15 U.S.C. § 1119 directing the USPTO to cancel and/or appropriately amend the Asserted Registrations to reflect their unprotectability or limited scope; and

4. A permanent injunction enjoining MVP from asserting or threatening trade-dress claims against Paddywax's accused products to the extent inconsistent with the Court's declarations; and

5. Costs of suit; and, in this exceptional case, reasonable attorneys' fees under 15 U.S.C. § 1117(a); and

6. General relief; and

7. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jacob T. Clabo
Jay S. Bowen, Esq., (TN Bar No. 2647)
Jacob T. Clabo, Esq., (TN Bar No. 36760)
**GRIFFIN BOWEN, PLLC**
48 Music Square East
Nashville, TN 37203
Tel.: (615) 742-4800
jbowen@griffinbowen.com
jclabo@griffinbowen.com

*Counsel for Paddywax, LLC*